# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of PILECO, INC., | ) ) ) | |
| Plaintiff-counterdefendant, | ) ) | |
| v. | ) ) | |
| SLURRY SYSTEMS, INC. and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) ) | |
| Defendant-counterplaintiff and Defendant. | ) ) ) | 09 C 7459 |
| _____ | ) ) | Judge Ronald A. Guzmán |
| SLURRY SYSTEMS, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| BAUER MASCHINEN GMBH, | ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

United States of America, for the use and benefit of Pileco, Inc. ("Pileco"), has sued Slurry Systems, Inc. ("SSI") and Fidelity and Deposit Company of Maryland ("Fidelity") for breach of contract and violation of the Miller Act, 40 U.S.C. § 3131 *et seq.*, respectively. SSI counterclaimed and brought a third-party complaint against Bauer Maschinen GmbH ("Bauer") for negligent misrepresentation, breach of contract, and promissory estoppel. Bauer now moves to dismiss SSI's negligent misrepresentation claim, *i.e.*, Count I of the third-party complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the Court grants the motion.

## Parties and Background

SSI is a Delaware corporation in the business of the construction of slurry walls and installation of earth retention systems for construction projects. (Third-Party Compl. ¶ 1.) Bauer is a German corporation in the business of the development and manufacture of foundation engineering equipment. (*Id*. ¶ 2.) Bauer's website states that Bauer offers "more than just the machine" and "complete specialist foundation engineering solutions." (*Id*. ¶ 10.) Pileco is a Texas corporation in the business of the sale and rental of drills, trench cutters and other heavy machinery used in the foundation construction industry. (*Id*. ¶ 3.) Bauer and Pileco are both wholly-owned subsidiaries of Bauer AG, a German corporation. (*Id*. ¶¶ 2-3.)

In mid-2005, the U.S. Army Corps of Engineers ("ACOE") solicited bids for a construction project known as the Chicago Underflow Program – McCook Reservoir – Stage 2 Cutoff Wall (the "Project") in Willow Springs, Illinois. (*Id*. ¶ 8.) On or about October 25, 2005, SSI contacted Bauer seeking assistance in preparing a bid for the project. (*Id*. ¶ 9.) SSI provided Bauer with the project's specifications, and Bauer recommended the use of a particular model of trench cutter, the BC 40 cutter, and related equipment, such as a crane, a bentonite treatment plant and a pump. (*Id*. ¶ 11.)

Bauer also provided SSI with performance and operation capabilities for the BC 40 cutter as well as quotes regarding production rates and costs for operating the cutter and budgets for teeth consumption/wear as well as spare parts, repair, and maintenance. (*Id*. ¶¶ 11-12.) Bauer agreed to provide technical support for the project by supplying an experienced crane and cutter operator. (*Id*. ¶¶ 11, 14.) Based on Bauer's representations, SSI submitted the technical and price proposals to ACOE. (*Id*. ¶ 15.) ACOE awarded the project to SSI and entered into a contract with SSI for an initial amount of $9,297,757.80. (*Id*. ¶ 16.)

On or about March 28, 2006, Bauer advised SSI that Pileco would actually issue and sign the final contract for rental of the equipment. (*Id*. ¶ 18.) On or about December 7, 2006, SSI entered into a contract with Pileco for rental of the BC 40 cutter and related equipment for $88,800.00 per month. (*Id*. ¶ 19; *see generally id*., Ex. A, Pileco, Inc. Rental Agreement No. 03-6040 ("Subcontract").) The subcontract's addendum provides that SSI is entitled to "an equitable adjustment to the rental price" for the period of any equipment breakdowns for which Pileco is responsible. (*Id*. ¶ 22; *id*., Ex. A, Addendum to Rental Agreement 03-6040 ("Addendum") at ¶ 22.) The addendum also provides that Bauer will supply a technician for commissioning and start-up. (*Id*., Ex. A, Addendum at ¶¶ 7-8.) SSI alleges that it experienced continuous cutter-related problems and equipment breakdowns during the project and incurred losses of more than $10 million. (*Id*. ¶¶ 25-29, 44.)

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co*., 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1141 (2010). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Under Illinois law, the *Moorman* doctrine bars suits for purely economic loss based on negligent misrepresentations. *Moorman Mfg. Co. v. Nat'l Tank Co*., 435 N.E.2d 443, 453 (Ill. 1982). The Court defines economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property." *Id*. at 449. The underlying rationale for this rule is that

3

economic loss dealing with a purchaser's disappointed expectations due to the product's deterioration or breakdown can be best remedied by contract, rather than tort, law because such extension of tort law would encroach upon the legislative scheme of the Uniform Commercial Code. *Id*. at 450-51, 453; *see also Ruscitti v. Atchison, Topeka & Santa Fe Ry. Co.*, 987 F. Supp. 1039, 1044 (N.D. Ill. 1997) ("[T]he *Moorman* doctrine is not limited to buyers [of products]."); *Am. Xyrofin, Inc. v. Allis-Chalmers Corp.*, 595 N.E.2d 650, 652 -53, 655-56 (Ill. App. Ct. 1992) (applying the *Moorman* doctrine to a dispute over leased equipment). However, this doctrine does not bar such claims against a party who is "in the business of supplying information for the guidance of others in their business transactions." *First Midwest Bank, N.A. v. Stewart Title Guar. Co*., 843 N.E.2d 327, 332 (Ill. 2006).

Determination of whether a party is in the business of supplying information requires a precise, case-specific analysis. *Rankow v. First Chi. Corp.*, 870 F.2d 356, 361 (7th Cir. 1989). Under this analysis, there are three categories of businesses: (1) businesses that supply only non-informational goods or services, where any information supplied is incidental to the sale of the product; (2) businesses that supply information as well as non-informational goods or services; and (3) businesses that provide a product consisting solely of information. *Gen. Elec. Capital Corp. v. Equifax Svcs., Inc.*, 797 F. Supp. 1432, 1442-43 (N.D. Ill. 1992).

The *Moorman* doctrine bars negligent misrepresentation claims against the first category of businesses, but not the third, and "[b]etween these two extremes lie the more difficult cases." *See Rankow*, 870 F.2d at 364. In general, manufacturers and sellers who provide only tangible products are not "in the business of supplying information." *Id*. (collecting cases). However, manufacturers and sellers often provide information, such as operating or assembly instructions and warranties, as well as their tangible products. *Id*. A court must then ask what the product is,

4

and if "the product (a building, precipitator, roofing material, computer or software) is not itself information, [then] . . . the information provided is merely incidental." *Id.*

The Seventh Circuit has held that an equipment manufacturer that provides appraisals for its own equipment is not in the business of supplying information because the appraisals are merely incidental to its business of manufacturing and selling machinery. *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 475 (7th Cir. 1997). In *Orix*, the plaintiff commercial lender loaned money to a forklift equipment dealer and asked the defendant Taylor, a forklift equipment manufacturer and seller, to provide appraisals of Taylor-manufactured products owned by the dealer that would serve as collateral for the loan. *Id.* at 471-72. The *Orix* court reasoned that because Taylor did not have an appraisal department or charge a fee for providing appraisals, Taylor was not in the business of supplying information. *Id.* at 476. The Court further emphasized that Taylor only provided appraisals of its own equipment in order to sell or assist its dealers in selling the equipment. *Id.*

Here, the issue is whether Bauer's provision of various cutter-related production rates, costs and operational details to SSI places Bauer within the "business of supplying information" for the purposes of *Moorman*. SSI argues that it has sufficiently pleaded that Bauer belongs in the second or third category of businesses because it holds itself out to customers as a provider of "more than just the machine" and offers "complete specialist foundation engineering solutions" based on its expertise. (Third-Party Compl. ¶ 10.) Bauer responds that the information was merely incidental to the end product of equipment rental, placing it in the first category. The Court agrees with Bauer.

Based upon the pleadings, the purpose of the subcontract was clearly the rental of the

BC 40 cutter and related equipment manufactured by Bauer. Despite the language in Bauer's website, Bauer is not alleged to have a bid-support department or to have charged a fee for providing production rates, costs and operational details of certain equipment. (*See generally* Third-Party Compl.)  Furthermore, Bauer provided quotes only for its own equipment in order to rent or assist Pileco in renting the equipment. (*See generally id.*, Ex. A, Subcontract & Addendum.)  To the extent Bauer supplied information about the cutter-related costs and operational details to SSI, this information was merely incidental to the rental of the BC 40 cutter and related equipment.  Therefore, because Bauer is not in the business of providing information for the guidance of others in their business transactions, SSI's negligent representation claim against Bauer is barred by *Moorman*.

**Conclusion**

For the foregoing reasons, the Court grants Bauer's motion to dismiss Count I of SSI's third-party complaint [doc. no. 16] and dismisses Count I with prejudice.

SO ORDERED

August 30, 2010

ENTERED:

_____
**HON. RONALD A. GUZMAN**
**U.S. District Judge**