**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of PILECO, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 09 C 7459 |
| SLURRY SYSTEMS, INC. and FIDELITY AND DEPOSIT INSURANCE COMPANY OF MARYLAND, | ) ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) | |
| ----------------------------- | ) | |
| SLURRY SYSTEMS, INC., | ) ) | |
| Third Party Plaintiff | ) ) | |
| v. | ) ) | |
| BAUER MASCHINEN GMBH, | ) ) | |
| Third Party Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit, Pileco, Inc. has sued Slurry Systems, Inc. ("SSI") and its surety, Fidelity and Deposit Company of Maryland ("F&D"), seeking to recover money allegedly owed on a contract executed in connection with a reservoir project undertaken by the Army Corps of Engineers in Willow Springs, Illinois. In its complaint, Pileco alleged two counts: count one, asserted under the Miller Act, seeks payment on a payment bond, issued by F&D, in connection with the project; and count two alleges breach of contract and seeks monetary damages in excess of $4 million from

SSI. SSI answered the complaint, and, along with its answer, filed a counterclaim against Bauer Maschinen and Pileco, alleging that, in connection with the reservoir project, it subcontracted with Pileco and Bauer to provide certain equipment necessary to the job, that the equipment never worked properly, that Pileco and Bauer breached their agreement with SSI, and that SSI paid Pileco all that it was due under the contract.

The case is set for trial on May 13, 2013, and, in preparation for trial, both sides have filed motions *in limine*. The purpose of this memorandum opinion and order is to rule on those motions to the extent possible.

## Discussion

"A motion *in limine* is a motion 'at the outset' or one made 'preliminarily.'" *Ellis v. Country Club Hills*, No. 06 C 1895, 2011 WL 6001148, at *1 (N.D. Ill. Dec. 1, 2011)(quoting BLACK'S LAW DICTIONARY 803 (8th ed. 2004). "Motions *in limine* may be used to eliminate evidence 'that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose.'" *Id.* (quoting *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997). "The party seeking to exclude evidence has the burden of demonstrating that the evidence would be inadmissible for any purpose." *Id.* (citing *Robenhorst v. Dematic Corp.*, No. 05 C 3192, 2008 WL 1766525, at *2 (N.D. Ill. Apr. 14, 2008)).

Together, the parties have filed 13 motions *in limine*. Pileco and Bauer jointly filed eight motions: motion number 1 seeks to preclude the introduction of evidence or testimony relating to production estimates, budgets, schedules or other recommendations suggested by Pileco and Bauer that are not part of the contract between the parties; number 2 seeks to bar any testimony or documents making any reference to any of SSI's pre-contract complaints; number 3 seeks to bar evidence of problems with other cutter operations; number 4 seeks to bar any reference to SSI's claim that the cutter experienced 120.85 days of downtime; number 5 seeks to bifurcate the liability and damages portions of SSI's Second Amended Counterclaim and Third Party Complaint; number 6 seeks to bar evidence of settlement negotiations; number 7 seeks to compel SSI to elect its remedy; and number 8 seeks to bar "new witnesses."

SSI filed five motions: motion number 1 seeks to bar mention of any other claims on the bond and other disputes involving SSI; motion number 2 seeks to bar Pileco from seeking damages for the off-hire report and Junker report; motion number 3 seeks to exclude the testimony and opinions of Craig Clarke; motion number 4 seeks to bar portions of Johann Burger's testimony; and motion number 5 seeks to bar any testimony or evidence relating to any evaluations of the project performed by the Army Corps of Engineers. The Court considers each motion below.

3

A.   Pileco/Bauer's Motions *in Limine*

    (1) Motion No. 1:Production Estimates, Budgets and Schedules

    In their first motion *in limine*, Pileco and Bauer argue that, under the law of the case doctrine, SSI should be barred from introducing any evidence concerning production estimates, budgets, schedules or other recommendations provided by Pileco and Bauer to SSI during the bidding phase of the McCook Reservoir project, but not made part of the contract between the parties. More specifically, Pileco and Bauer argue that this evidence should be precluded consistent with Judge Guzman's order dismissing SSI's negligent misrepresentation claim. But this evidence is also relevant to SSI's breach of contract and breach of warranty claims. SSI alleges that it relied on this evidence when submitting its bid on the project, and, in ruling on summary judgment, this Court recognized the significant role Bauer played in that whole process. The motion is denied.

    (2) Motion No. 2: Pre-Contract Complaints

    Next, Pileco and Bauer seek to bar any testimony or documents referencing complaints or issues raised by SSI prior to the execution of the contract. According to SSI's counterclaim, SSI engaged in conversations with Pileco and Bauer prior to submitting its bid; it arranged for the delivery of the cutter and began a test section; and experienced problems with the cutter from the very beginning. The parties discussed and worked

out some of the issues, then executed a rental agreement that reflected the changes made as a result of those discussions. Pileco and Bauer seem to be arguing that the issues and discussions that occurred prior to the execution of the rental agreement are inadmissible and irrelevant. Given the history of the parties' dealings, the relevance of these discussions can hardly be questioned. And there is no evidence to show that SSI somehow waived its right to proceed on those earlier issues. Accordingly, this motion is denied.

(3) <u>Motion No. 3: Complaints by Other Customers</u>

Next, Pileco and Bauer seek to bar any evidence concerning complaints made by other cutter owners or lessees. This evidence is relevant – indeed, crucial, to SSI's Illinois Consumer Fraud Act claim. In that claim, SSI alleges that Pileco and Bauer knew the cutter was experiencing problems in the field because of reports coming from other customers; yet, they did not advise SSI of those reports and instead opted to blame SSI and other issues for the problems, even as they were working on redesigns to fix the very problems SSI was experiencing. Evidence of other reports from other customers – if they are the same or similar to those raised by SSI – are relevant to this claim, so long as they were made during the relevant timeframe (roughly October 2006 through January 2009).

5

(4)  <u>Motion No. 4: Cutter Downtime</u>

Next, Pileco and Bauer seek to preclude any reference to the fact that the cutter was "down" for 120.85 days or that SSI was entitled to an equitable adjustment to the rent for the period of down time.  During summary judgment, Pileco and Bauer conceded that the cutter was "down" for 120.85 days.  But, for purposes of trial, they intend to hold SSI to its burden of proving that all of that down time is the fault of Pileco or Bauer.  It is Pileco and Bauer's prerogative to hold SSI to its burden of proving this issue, and, indeed, SSI does not oppose the motion.  Accordingly, the motion is granted.

(5)  <u>Motion No. 5: Bifurcation</u>

Next, Pileco and Bauer ask the Court to bifurcate the liability and damages portions of SSI's case.  The motion is denied.  Pileco and Bauer argue that bifurcation would serve the interests of judicial economy and avoid prejudice to the parties. The Court disagrees.  Issues concerning damages and liability are inextricably linked in this case, given the circumstances of the parties' contractual dealings and the evolution of their contractual relationship.  It is true, as Pileco and Bauer assert, that, if liability is not established, the jury need never consider the question of damages.  But that is true in most cases.  There is nothing unduly complicated about the damages aspect of this case, and the Court sees no reason to separate the

liability and damages issues.

(6)   Motion No. 6: Settlement Negotiations

In their sixth motion *in limine*, Pileco and Bauer seek to exclude all evidence relating to the attempted settlement of these disputes.   Federal Rule of Evidence 408 provides that

> [e]vidence of the following is not admissible – on behalf of any party  – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim . . . .

The Rule does, however, allow the court to admit such evidence for another purpose, such as proving a witness' bias or prejudice.   *Id.*

Pileco and Bauer seek to invoke the rule to prevent SSI from offering evidence concerning additional negotiations that may or may not have culminated in additional contract terms, and contract terms that may or may not have been ultimately agreed to by the parties.   SSI argues that this evidence is admissible to prove SSI's claims, that Pileco and Bauer are estopped from denying the settlement terms they negotiated, and that it is entitled to a declaratory judgment that the agreement reached by the parties is binding and enforceable.

The record on summary judgment included evidence reflecting post-contract discussions by the parties concerning settlement

7

and their attempts to revise the terms of their deal to bring the matter to a close. This evidence, the Court held, precluded summary judgment in Pileco's favor on its breach of contract claim. At the same time, the Court recognized that this evidence would support some of SSI's claims, though there too summary judgment was inappropriate given the many issues of fact. To be sure, this evidence is relevant – not to prove or disprove the validity or amount of SSI's claims, but to establish the precise terms of the contractual relationship in an effort to ascertain whether either side, in fact, breached. Rule 408 does not preclude the admission of this evidence for this purpose, and Pileco/Bauer's motion *in limine* is denied.

(7) <u>Motion No. 7: Election of Remedy</u>

In their seventh motion *in limine*, Pileco and Bauer seek an order requiring SSI to elect its remedy and barring any evidence to the effect that Pileco/Bauer's breaches of the subcontract vitiated SSI's obligation to perform under the rental agreement. Based upon the evidence submitted on summary judgment, the Court recognizes that the contractual relationship between these parties is complicated. Though the initial contract terms may have seemed clear, additional terms were reached and concessions were made to address equipment problems and other issues. At some point, it appears that SSI's obligation to make payments under the rental agreement was excused and the subject of an

8

equitable adjustment was introduced. In response to the motion, SSI has indicated that it agrees that its obligation to pay rent was not vitiated because of any breach by Pileco or Bauer. And, to the extent Pileco/Bauer's motion seeks to bar evidence showing otherwise, the motion is granted. But the Court will allow SSI to offer evidence concerning the effect of the equitable adjustment on its obligation to pay under the agreement.

(8) <u>Motion No. 8: Newly Disclosed Witnesses</u>

Finally, Pileco and Bauer have moved *in limine* to bar any witnesses disclosed by SSI for the first time in its Supplemental Rule 26 disclosures, filed on March 22, 2013. In particular, Pileco and Bauer argue that Regina Blair, Michael Flecker and Jim Pipkorn – all listed in the Final Pretrial Order as SSI's "may call" witnesses – should be precluded from testifying because SSI never identified them in its Rule 26 disclosures.[1] "Never" is inaccurate – in fact, Pileco and Bauer concede that SSI disclosed these witnesses on March 22, 2013, but only after the objections were made; they argue that this was too late, however, and that the late disclosure prejudices them.

SSI argues that, because these witnesses came to light during discovery, it had no duty under the Rule to supplement its

---

[1]Pileco and Bauer also moved to bar Dieter Stetter from testifying. But, in the Final Pretrial Order submitted to the Court, his name does not appear on the list of SSI's witnesses (neither may call, nor will call).

disclosures to include them.  SSI argues that these witnesses have been known to Pileco and Bauer for years, and that their disclosure cannot have been surprising.  The Court agrees.

Under the circumstances, the inclusion of these witnesses on SSI's "may call" list cannot have unfairly surprised Pileco and Bauer.  Regina Blair is the Contracting Branch Chief for the Army Corps of Engineers; in fact, as SSI points out, in March of 2011, Bauer identified her as someone who "may have knowledge of the allegations contained within the pleadings in this Lawsuit."  *See* Bauer's First Supplement to Answers to SSI's First Set of Interrogatories, p. 3 (attached as Exhibit B to SSI's Response to the Motion in Limine).  Michael Flecker, a mechanic with Liebherr Nenzing Crane Co. (the owner of the crane used to hold the cutter at the McCook reservoir jobsite) came to light at the deposition of Bauer employee Robert Kaindl in March of 2011.  *See* Deposition of Robert Kaindl, pp. 209-214, 227-228, 232 (attached as Exhibit D to SSI's Response to the Motion in Limine) In fact, SSI argues, Pileco and Bauer have identified as a trial exhibit a report that Flecker prepared regarding the pressures of the Liebherr crane used at the McCook Reservoir jobsite. And Jim Pipkorn is a mechanic for American States; he was responsible for commissioning the Liebherr crane at the jobsite in October 2006. He prepared a commissioning report that has been produced in discovery and his name appears throughout the daily logs prepared

by former SSI employee Mike Roberts (Pileco and Bauer have also included the daily logs on their list of trial exhibits).

The Court is not persuaded that Pileco and Bauer are in any way prejudiced or harmed by the inclusion of these witnesses on SSI's "may call" list. If, at trial, it becomes apparent that SSI intends to elicit from any of these witnesses lines of testimony that go beyond what would be expected, given the discovery, Pileco and Bauer may renew their motion and the Court will revisit the issue. For now, the motion to exclude Ms. Blair, Mr. Flecker and Mr. Pipkorn is denied.

B.   SSI's Motions *in Limine*

   (1)   Motion No. 1: Other Claims/Disputes

On January 18, 2006, the United States Army Corps of Engineers engaged SSI to build a "soil-bentonite cutoff wall" at the McCook Reservoir in Willow Springs, Illinois. SSI's Motion in Limine No. 1., p. 1. As required under the contract and the Miller Act, 40 U.S.C. §1331, SSI supplied a payment bond, furnished by Fidelity and Deposit Company of Maryland, a defendant in this case. *Id.* According to SSI, in addition to the claims involved in this lawsuit, the McCook project gave rise to three other claims on the Bond issued by FDCM (these other claims were made by Great Lakes Soil and Environmental Consultants, Inc., Chicago Machinery, and Thoesen Tractor) and one other dispute (between SSI and Environmental Barrier

11

Company).  But none of these concern the rental agreement or the cutter involved in this lawsuit.  Thus, in its first motion, SSI seeks to bar Pileco and Bauer from "mentioning, inquiring about, adducing or presenting evidence related to any other claim on the bond" and from "mentioning, inquiring about, adducing or presenting evidence related to any other disputes involving SSI . . . ." *Id.*, pp. 1-2.  SSI argues that such evidence is not relevant to the dispute between SSI and Pileco and that it would impermissibly and unnecessarily broaden the scope of this trial, because it would force SSI to re-litigate the allegations asserted in those other claims and disputes.

Pileco and Bauer do not oppose the motion to bar evidence of other claims on the bond, and that part of the motion is granted.  But they do oppose the motion to preclude evidence concerning SSI's dispute with EBC.  They argue that this evidence is relevant because it affected SSI's financial situation at the time it was getting the McCook Reservoir project up and running.  The Court finds that this evidence is not relevant to the dispute at issue in this lawsuit.  Evidence concerning how much money SSI had to lay out to cover its litigation costs or appeal bond, by itself, does not necessarily establish anything with respect to its mindset on the McCook project.  And, to be sure, to the extent the evidence has any probative value, it is vastly outweighed by the prejudice it would cause. SSI's motion *in*

*limine* number 1 is granted; Pileco and Bauer are precluded from offering any evidence concerning other claims or disputes.

(2)  <u>Motion No. 2: Off-Hire & Junker Reports</u>

In its second motion *in limine*, SSI seeks to preclude Pileco from claiming damages for the "Off-Hire Report" or the "Junker Report." By way of background, the rental agreement for the cutter required SSI to pay Pileco "for cleaning and the final repair of damages (if any), as specified in an off-hire report at the end of the rental period." Rental Agreement, ¶9. Bruce Bradley went to the job site to prepare the off-hire report for Pileco and was there, on and off, for a period of two weeks in January 2009, after the cutting work had been completed and the cutter had been decommissioned at the site. Mr. Bradley testified that he served more as a supervisor for the report and that the actual inspection was done by SSI employees; he testified that this slowed things down for him but did not limit his ability to prepare his report. Bradley Dep., pp. 80-81. After receiving Mr. Bradley's off-hire report, and getting the cutter back to its yard in Houston, Pileco hired George Junker Engineering, a German company, to prepare a report on the condition of the cutter; this report (the "Junker report") was apparently wildly inconsistent with Mr. Bradley's report, and estimated that it would cost $603,027.58 to "refurbish" the cutter. The contract does not say anything about refurbishment;

13

nor does it require SSI to pay for the preparation of the off-hire report or a report such as the Junker Report.

According to its Damages Itemization in the Final Pretrial Report, Pileco is claiming "unpaid invoices for Pileco repairs and parts: $1,633,455.00"; SSI believes that these "unpaid invoices" include those from Mr. Bradley (invoicing his services in the preparation of the Off-Hire Report) and from Junker Engineering (invoicing services relating to the preparation of the Junker Report and the "refurbishment" work done pursuant to that report).

As the Court noted in ruling on summary judgment, the contract between SSI and Pileco does not require SSI to pay for "refurbishment"; nor does it require SSI to pay for the preparation of an off-hire report or any similar report. Thus, Pileco is precluded from seeking damages for those costs. Additionally, Mr. Bradley testified that the situation at the job site did not prevent him from preparing his report. Pileco's suggestion that the Junker report was somehow necessary because the Off-Hire Report was incomplete or deficient because of that situation is simply not supported in the record. Accordingly, the motion to exclude that evidence is granted. Having said that, the contract clearly does require SSI to pay for final repairs as indicated in the Off-Hire Report, and the Court will allow Pileco to offer evidence on that issue.

14

(3)  Motion No. 3: Craig Clarke

In its third motion *in limine*, SSI seeks to bar the testimony and opinions of Craig Clarke, Pileco's rebuttal expert witness; SSI argues that Mr. Clarke's testimony does not satisfy *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The admissibility of expert testimony in federal court is governed by Rule 702, and the principles announced in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Federal Rule of Evidence 702 provides that, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or date;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

And *Daubert* and *Kumho* instruct that the Court is to act as a "gatekeeper," deciding whether to admit or exclude expert evidence based upon a "flexible" test, looking to a variety of factors intended to gauge the evidence's reliability and relevance.  As the party seeking to introduce the expert testimony, Pileco and Bauer have the burden of establishing, by a preponderance of the evidence, that it is admissible.  *See, e.g.,*

*Autotech Technologies Limited Partnership v. Automationdirect.com, Inc.*, No. 05 C 5488, 2005 WL 3180147, at *8 (N.D. Ill. Nov. 23, 2005).

Craig Clarke, a senior consultant at Diversified Business Consulting, Inc., was retained by Pileco and Bauer as an expert in this case, and he is listed as a "will call" witness in their defense of SSI's counterclaim and third party complaint. At the time of his report, he had been a certified public accountant for 30 years and a certified fraud examiner for 7 years; he indicates in his report that, for the past 8 years, he had also "provided consulting services and economic damage analysis in a broad range of economic loss cases" and had been qualified to testify as an expert witness on a number of occasions. *See* Report of Alleged Economic Loss, p. 1 (attached as Exhibit A to SSI's Motion in Limine). Mr. Clarke prepared a report in connection with his work for Pileco; it is dated December 14, 2012 and entitled "Report of Alleged Economic Loss." In it, he indicates that Pileco hired him "to evaluate the loss calculations claimed by SSI and to review the accounting and financial documents provided by it as well." Report, p. 1. More specifically, Mr. Clarke states, he was "asked to examine the SSI loss calculations to determine if they were prepared using sound economic and accounting practices. I was also asked to review the documents provided by SSI to see if they were sufficient to support those

loss calculations." *Id.* Additionally, he states that he was "asked to review paragraph 22 of the Addendum to the Rental Agreements 03-6040 between Pileco and SSI and render an opinion as to the proper methodology of calculating the daily rate for the equitable adjustment to the rental price." *Id.*

In his report, Mr. Clarke details the many problems he found in the way Dana Wesolek (SSI's Vice President and later President) calculated SSI's expected profit from the McCook project and SSI's damages. Report, pp. 4-9. He also details the issues he perceives with the loss calculation prepared by Philip Klein, who he characterizes as "a retired CPA hired by SSI to prepare an analysis of the losses allegedly suffered by SSI due to the actions of Pileco." *Id.*, pp. 9-16.

Finally, Mr. Clarke concludes that Mr. Klein's calculation of alleged damages is flawed and that, under the rental agreement, SSI would be entitled to an equitable adjustment to the rental price equal to $2,960 for each day during which SSI could not use the equipment." *Id.*, p. 18.

SSI argues that Mr. Clarke's calculations are based on simple math, not on any specialized knowledge, and that he should, therefore, not be permitted to testify as an expert. Pileco and Bauer disagree, arguing that Mr. Clarke is competent to testify concerning SSI's claimed damages and concerning the equitable adjustment provision in the parties' contract.

At his deposition, Mr. Clarke clarified that, with respect
to the equitable adjustment referenced in the parties' agreement,
he was not asked (nor presumably would he have been qualified) to
opine on whether SSI was entitled to an equitable adjustment; nor
was he asked to opine on the amount of the adjustment. Clarke
Dep., pp. 54-57 (attached as Exhibit B to SSI's Motion *in
Limine*). On this issue, he simply opined on the methodology for
how that adjustment would be calculated – and even that was
limited to the math, not to any legal or accounting principles
that may be involved in making that determination. Pileco and
Bauer argue that, although the calculation may appear simple,
paragraph 22 is confusing; they argue that Mr. Clarke's testimony
can help resolve that confusion. But, based on his report and
his deposition testimony, he can add nothing about the
contractual language. Basically, he was asked to figure out an
appropriate way of calculating a daily rate for the equitable
adjustment and he did so; he did not interpret the contract
language – nor is he qualified to do so. In short, the Court
finds that on the question of the equitable adjustment, Mr.
Clarke brings nothing to the table in the way of "expertise" and,
as such, he is precluded from testifying as an expert on this
issue.

It is not clear that SSI is seeking to preclude Mr. Clarke
from testifying concerning his opinions about the flaws in Ms.

18

Wesolek's damage/loss calculations or in Mr. Klein's damage/loss calculations. But, to the extent it is, that part of the motion is denied. If SSI puts Mr. Klein on the stand to testify concerning SSI's damages, Pileco and Bauer should be able to rebut that testimony, and, on this issue, Mr. Clarke's expertise may, in fact, assist the trier of fact.

(4) <u>Motion No. 4: Johann Burger</u>

In its fourth motion *in limine*, SSI seeks to bar portions of the testimony of Johann Burger, another of Pileco's expert witnesses; SSI seeks to bar those portions of his testimony that are duplicative to the testimony of Franz-Werner Gerressen, Pileco's other expert witness. According to Pileco's disclosures, Mr. Gerressen will offer 15 opinions, and Mr. Burger will offer 10 opinions.

To be sure, the Court has no intention of allowing the parties to offer evidence that is redundant or duplicative. And after reviewing Pileco's Rule 26(2)(c) disclosures, the Court agrees with SSI that the vast majority of the opinions disclosed for Mr. Burger are also disclosed for Mr. Gerressen. Of the 10 opinions disclosed for Mr. Burger, only two are novel (numbers 8 and 10). But the Court will not dictate which witness Pileco offers for these opinions; it may choose to call either Mr. Burger or Mr. Gerressen to testify concerning the eight overlapping opinions, but it may not call both witnesses to

19

testify concerning the same issues. The motion *in limine* is granted to the extent that it seeks to bar duplicative opinion testimony; but, beyond that, the motion is denied. The Court will allow Pileco to decide which one expert witness it wants to offer on those overlapping opinions.

(5) Motion No. 5: Evaulations

In its last motion *in limine*, SSI seeks to bar Pileco and Bauer from "mentioning, inquiring about, adducing or presenting evidence related to any evaluations of the project performed by the Army Corps of Engineers." Motion No. 5, p. 1. SSI argues that the evaluations are hearsay and not subject to any exception to the rule precluding such evidence; SSI also argues that, even if the records were admissible under some exception to the hearsay rule, they should still be barred under Rule 403. Pileco and Bauer disagree, arguing that the evaluations are relevant and admissible under either the business records or public records exceptions to the hearsay rule.

As the parties correctly note, as a general rule, evidence that is hearsay is inadmissible unless it falls within a delineated exception to the rule. *See* Fed. R. Evid. 802, 803. Most relevant for today's purposes, the rules provide that "records of a regularly conducted activity" and "public records" are admissible under certain circumstances. Fed. R. Evid. 803(6), (8). Under Rule 803(6), "[a] record of an act, event,

condition, opinions, or diagnosis" is not excluded under the
hearsay rule if:

> (A) the record was made at or near the time by –
> or from information transmitted by – someone with
> knowledge;
> (B) the record was kept in the course of a
> regularly conducted activity of a business,
> organization, occupation, or calling, whether or not
> for profit;
> (C) making the record was a regular practice of
> that activity;
> (D) all these conditions are shown by the
> testimony of the custodian or another qualified
> witness, or by a certification that complies with Rule
> 902(11) or (12) or with a statute permitting
> certification; and
> (E) neither the source of information nor the
> method or circumstances of preparation indicate a lack
> of trustworthiness.

Fed. R. Evid. 803(6).  Under Rule 803(8), a record or statement
of a public office is not excluded under the hearsay rule if:

> (A) it sets out:
>> (i) the office's activities;
>> (ii) a matter observed while under a legal
> duty to report . . . ; or
>> (iii) in a civil case or against the
> government in a criminal case, factual findings from a
> legally authorized investigation; and
> (B) neither the source of the information nor
> other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

SSI seeks to exclude three evaluations.  The first, dated
September 16, 2008, indicates that it is an interim evaluation
created when the project was 50% complete; the second, which is
not dated, indicates that it is an interim evaluation created
when the project was 80% complete; and the third, dated June 3,

2010, indicates that it is a final evaluation. *See* Exhibits 15, 16 and 17 of Pileco and Bauer's Response to SSI's Motions *in Limine*. Initially, the Court questions the relevance of the evaluations to the claims at issue in this lawsuit. Certainly, the ACOE's assessment of SSI's performance would have nothing to do with Pileco and Bauer's breach of contract and Miller Act claims.

Moreover, even if relevant, if the documents are offered to show that SSI's performance fell short in the ACOE's view, they are inadmissible hearsay. And, at least at this point, the Court is unable to say that the records satisfy the criteria spelled out in the relevant exceptions to the hearsay rule. For example, with respect to the requirement that the records be created by persons with knowledge, Pileco argues that Timothy Flaherty of the ACOE attended every progress meeting from the start of the project until its completion; yet, there is no indication that Mr. Flaherty created or supplied information for the records. And Pileco and Bauer have said nothing about the people whose names appear on the records. Additionally, although the work at the site was completed in early 2009, the final evaluation was not completed until May of 2010. Under the circumstances, the Court is not persuaded that this lag is insignificant for purposes of Rule 803(6)(A).

And, although Pileco and Bauer have argued that concerns

regarding trustworthiness are not relevant under Rule 803(8), the
Court disagrees.  The rule plainly provides that, to be
admissible under the public records exception to the hearsay
rule, the records' source and surrounding circumstances must not
indicate a lack of trustworthiness.  For the reasons already
discussed, the Court cannot say that is the case here.

Federal Rule of Evidence 403 allows the Court to exclude
relevant evidence if its probative value is substantially
outweighed by a danger that it will cause unfair prejudice or
confusion, or that it will mislead the jury.  As explained, the
Court questions the relevance of the ACOE's assessment of SSI's
performance on the claims at issue in this case.  The ACOE was
not a party to the contract and SSI's performance evaluation had
no bearing on the contract between SSI and Pileco.  On the flip
side, the Court agrees that these evaluations may, in fact,
mislead or confuse the jury on the issue or even prejudice the
jury about SSI.  Accordingly, at least at this point, the Court
would also exclude the reports under Rule 403.

## CONCLUSION

For the reasons set forth above, the Court grants motion in
limine number 4 and motion in limine number 7 filed by Pileco and
Bauer; the rest of Pileco and Bauer's motions in limine are
denied.  Additionally, the Court grants motion in limine number
1, motion in limine number 2 and motion in limine number 5 filed

23

by SSI.   Additionally, motion in limine number 3 and motion in limine number 4 filed by SSI are granted in part and denied in part.

Date: May 3, 2013

E N T E R E D:

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT