**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,       )
for the use and benefit of      )
PILECO, INC.,                   )
                                )
            Plaintiff,          )
                                )
        v.                      )   Case No. 09 C 7459
                                )
SLURRY SYSTEMS, INC. and        )   Magistrate Judge Arlander Keys
FIDELITY AND DEPOSIT            )
INSURANCE COMPANY OF            )
MARYLAND,                       )
                                )
            Defendants.         )
------------------------------)
SLURRY SYSTEMS, INC.,           )
                                )
        Third Party Plaintiff   )
                                )
        v.                      )
                                )
BAUER MASCHINEN GMBH,           )
                                )
        Third Party Defendant.)

## MEMORANDUM OPINION AND ORDER

        In this lawsuit, Pileco, Inc. sued Slurry Systems, Inc.

("SSI") and its surety, Fidelity and Deposit Company of Maryland

("F&D"), seeking to recover money allegedly owed on a contract

executed in connection with a reservoir project undertaken by

the Army Corps of Engineers in Willow Springs, Illinois.  In its

complaint, Pileco alleged two counts: a Miller Act claim seeking

payment on a performance bond issued by F&D in connection with

the project; and a breach of contract claim seeking monetary damages in excess of $4 million from SSI.  SSI filed a counterclaim alleging that, in connection with the reservoir project, it subcontracted with Pileco and Bauer to provide certain equipment necessary to the job, that the equipment never worked properly, that Pileco and Bauer breached their agreement with SSI, and that SSI paid Pileco all that it was due under the contract.  SSI's counterclaim included nine counts: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) breach of the implied warranty of fitness for a particular purpose; (5) promissory estoppel; (6) alternative breach of contract (Bauer); (7) alternative breach of contract (Pileco and Bauer); (8)alternative declaratory judgment; and (9) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. All are asserted against both Pileco and Bauer, except for count 6, which is asserted against Bauer alone.

After the Court denied the parties' motions for summary judgment, the case was set for trial.  The parties tried the case, for the first time, in May of this year.  After eight days of testimony and argument, the case went to the jury.  The jury reached a verdict after deliberating for just four hours – not long, given that the parties had together introduced more than 6

binders of exhibits and given that the instructions were 57 pages long. The verdict was problematic in a number of respects. Most significantly, the jury awarded nothing in the way of compensatory damages on SSI's Consumer Fraud Act claim, but awarded $20 million in punitive damages on that claim. Additionally, the jury failed to consider (despite being explicitly instructed to do so) what everyone agreed was a key component of the parties' contractual claims – namely, the amount of the equitable adjustment due SSI on Pileco's breach of contract claim. The jury found for Pileco on its breach of contract claim and awarded $2,000,000, but left the equitable adjustment line completely blank, and awarded just $1,000,000 to Pileco on its Miller Act claim, when in theory the award under the Miller Act should have been the same as the award on the breach of contract claim. The jury also found for SSI on its breach of contract claims against Pileco and Bauer and awarded, respectively, $600,000 and $3,400,000; found for SSI on its breach of warranty claims and awarded SSI $200,000 from Pileco and $800,000 from Bauer; and found for SSI on its Consumer Fraud Act claim, as already discussed.

After discussing the problems with the verdict, the Court and the parties met once again to attempt to resolve the parties' dispute. That attempt was unsuccessful. Accordingly,

the Court, finding that the first verdict could not stand, *sua sponte* ordered a new trial.

The case was tried a second time in September. This time, the trial took nine days. The jury was given fewer documents and a much shorter, more concise set of instructions, and returned a verdict at the end of its first day of deliberations. The second jury found for Pileco on its breach of contract and Miller Act claims, and awarded Pileco $2,230,381.35 from both SSI and F&D (this award reflected an equitable adjustment of $357,716.00). The jury found for Pileco on SSI's breach of contract claim, for Pileco/Bauer on SSI's warranty claim, and for Bauer on SSI's Consumer Fraud Act claim. To state the obvious, the second trial yielded a very different outcome from the first. In the Court's view, this may be explained, in part, by the fact that Pileco/Bauer tried a very different case the second time around; they were much better prepared and much better organized. They clearly benefited tremendously from the first jury's confused and inconsistent verdict. For its part, SSI tried essentially the same case, though it did attempt to streamline things a bit. That's not a bad thing; in the Court's estimation, SSI tried a great case both times. But, as all good lawyers know, juries are unpredictable and trying a case to a

jury is risky; this case could be the poster child for juror unpredictability.

The case is currently before the Court on post-trial motions. SSI filed a motion to amend the final judgment or, in the alternative, for judgment as a matter of law or a new trial. F&D filed a motion for judgment as a matter of law or, in the alternative, for a new trial. Pileco and Bauer, who dodged a bullet with their "redo" and are understandably content with the second verdict, filed a motion for taxation of costs; Pileco also filed a motion seeking statutory interest. The Court considers each motion below.

A.    <u>SSI's Motion to Amend the Judgment</u>

SSI has moved to amend the judgment or, in the alternative, for judgment as a matter of law or for a new trial. Federal Rule of Civil Procedure 59, which addresses both motions to alter and amend and motions for new trial, provides that, after a jury trial, the Court "may, on motion, grant a new trial on all or some of the issues —- and to any party -- . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). Generally, a court may order a new trial only if the jury's verdict is "against the manifest weight of the evidence," or "if for other reasons the trial was not fair to

the moving party." *Willis v. Lepine*, 687 F.3d 826, (7th Cir. 2012)(quoting *Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011); *Pickett v. Sheridan Health Care Ctr.,* 610 F.3d 434, 440 (7th Cir. 2010)). And, generally, the Court may alter or amend a judgment under Rule 59(e) "when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542 (7th Cir. 2006)(citing *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000)). "Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Young-Gibson v. Board of Education of the City of Chicago*, No. 11 C 8982, 2013 WL 4598815 at *2 (N.D. Ill. Aug. 29, 2013)(quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009).

Federal Rule of Civil Procedure 50 addresses motions for judgment as a matter of law and provides that, once certain preliminaries are satisfied, the Court may enter judgment as a matter of law if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(b). When deciding a motion for judgment as a matter of law that is filed after the

jury has returned its verdict, "a court's review is 'limited to determining only whether any rational jury could have found for [the prevailing party], examining all evidence in the record to make that determination.'" *Woods v. Von Maur, Inc.*, No. 09 C 7800, 2012 WL 2062400, at *4 (N.D. Ill. June 7, 2012)(quoting *Hicks v. Forest Pres. Dist. of Cook County, Ill.*, 677 F.3d 781, 2012 WL 1324084 at *3 (7th Cir. 2012) and citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). And, importantly, the Court "may not 'step in and substitute its view of the contested evidence for the jury's.'" *Woods*, 2012 WL 2062400, at *4 (quoting Mathur v. Bd. of Trs., 207 F.3d 938, 941 (7th Cir. 2000)).

Motions like SSI's are not lightly granted. "A civil jury trial involves the expenditure of substantial resources and requires citizen jurors to spend significant time away from their jobs and families; courts, not surprisingly, are especially reluctant to throw out the judgment of jurors absent overwhelming cause." *Community First Credit Union v. United States*, No. 08-C-57, 2009 WL 2058476, at *1 (E.D. Wis. July 14, 2009). Here, the people serving as jurors interrupted their lives for a combined total of almost four weeks to focus on this case. SSI bears a tremendous burden in persuading the Court to grant it the relief it seeks.

Initially, SSI argues that "[t]he law cannot be so fickle or capricious" as to allow the second verdict to stand, in light of the first; "such vagary" – the result of the "whims" of the second jury – "mocks the justice system" according to SSI. But, other than the change in the outcome, SSI has not identified any way in which the second trial was unfair. And, ironically, in its motion, SSI argues that the "[c]ourts should preserve a jury verdict when possible." Brief, p. 7. The Court ruled that it was not possible to preserve the first verdict, and SSI has given the Court no reason to reverse that ruling. It is possible to preserve the second verdict, however.

SSI argues that the swing in verdicts – from $3 million (not counting the $20 million in punitives) in SSI's favor on the first, to almost the same in Pileco's favor on the second, can only be described as a travesty of justice. But SSI's "reversal of fortune" does not necessarily reflect a manifest injustice as SSI contends; the outcome is simply a function of the risk inherent with a jury. Trying a case to a jury – as all experienced lawyers know – is a risky proposition; indeed, that risk is precisely why so many cases settle and so few actually go to trial. SSI's attorneys – experienced trial lawyers – knew the risk and certainly adequately conveyed that risk to their client; and SSI opted to roll the dice rather than settle its

claims. Given the first verdict, the Court cannot say that was an unreasonable decision. But the outcome was by no means a sure thing. At trial, someone has to lose and someone has to win. Although SSI won the first time, it lost the second time. And everyone knew that was possible, even if it may have seemed improbable.

SSI argues that, after the original trial, the Court could simply have stricken the consumer fraud act portion of the verdict and entered judgment on the remainder of the claims. To be sure, the Court considered this, but opted not to do so for a couple of reasons: first, taking this action would have circumvented what the jury was trying to achieve with its verdict; and, second, striking the Consumer Fraud Act claim would not have fixed the problem with the jury's findings (or lack thereof) on the equitable adjustment. To fix this deficiency in the verdict, the Court would have had to make findings on an issue that was (all parties agreed) properly reserved for the jury. Taking this action would have been even more egregious if, as SSI argues, the jury actually did make implicit findings concerning the equitable adjustment by taking something off the breach of contract awards. A Court should not substitute its own judgment for that of the jury; nor should it toss out a jury's verdict simply because it disagrees with it.

*E.g., Tart v. Illinois Power Co.*, 366 F.3d 461, 478-79 (7th Cir.
2004); *Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d
638, 644 (7th Cir. 2001)(citing *Place v. Abbott Labs.*, 215 F.3d
803, 809 (7th Cir. 2000)).

SSI argues that the Court should enter judgment in its
favor on Pileco's breach of contract claim, notwithstanding the
verdict, because Pileco did not introduce any evidence to show
that the cutter and related equipment were new, which it argues
was a requirement of the contract.  In fact, most of the
evidence that did come in showed that the equipment was not new;
the evidence concerning the B-Tronic system showed that the
cutter may have been operating since 2004, two years before it
arrived at SSI's jobsite, and there was testimony that the
cutter's wheels already reflected wear and tear when the cutter
arrived on the scene.  But the evidence also showed that the
word "new" was written into the contract after the fact by SSI,
and that it was added after SSI took possession of the
equipment.  Thus, by the time SSI signed the contract, it knew
what it was getting.  The jury was not required to believe SSI's
argument that Pileco was contractually obligated to provide new
equipment.  The jury could reasonably have concluded that SSI
accepted the equipment – whether or not it was new, and that the
insertion of the word "new" into the contract, which was signed

well after the equipment arrived on site, changed nothing in terms of Pileco's obligations under the contract. The Court cannot say that no rational jury could have reached this conclusion.

SSI also argues that allowing the verdict to stand results in a windfall to Pileco because, under the verdict, Pileco gets the full amount owed under the rental agreement, but still gets to keep the proceeds from its post-contractual sale of the cutter to Bencor. But this seems to be exactly what the rental agreement contemplated absent SSI's exercise of the purchase option. The jury heard evidence concerning the agreement and was permitted to take the agreement and addendum into the jury room; it also heard evidence concerning SSI's experience with the cutter and SSI's return of the cutter, and it heard evidence demonstrating unequivocally that, regardless of what SSI considered in terms of the retention of the cutter, it never exercised the option to purchase the cutter.

SSI also argues that it is entitled to judgment on its breach of warranty claim because no reasonable jury could have found that the cutter performed as expected. To be sure, there was a plethora of evidence introduced concerning the deficiencies in the cutter's performance, including the numerous drive unit failures and gear box failures. But SSI conceded

that, ultimately, SSI was able to complete the work it undertook for the Army Corps of Engineers for phase 2 of the McCook Reservoir project. From this, the jury could reasonably have found that the cutter was, in fact, not unfit for the intended purpose.

In response to SSI's motion, Pileco argues that it would be inappropriate for the Court to re-instate the first verdict because SSI failed to prove the elements of its claims. But that is an overreach. SSI introduced an abundance of evidence that could easily have supported a jury verdict in its favor. Because the first jury botched the verdict, Pileco and Bauer got a second chance to try their case; they did a much better job the second time around, and, although the verdict easily could have gone the other way – the jury was persuaded. SSI offered plenty of evidence to support its claim – and if it had been in the Court's power to salvage the first verdict, it would have done so. The original verdict was not surprising, it just couldn't stand under the law because of the problems the Court noted in ordering a retrial. Just as it would have been inappropriate for the Court to substitute its judgment for that of the original jury, it is also inappropriate for the Court to substitute its judgment for that of the second jury. Unlike the first verdict, this verdict can stand under the law – even if it

could just as easily have gone the other way.  The
inconsistencies and arbitrariness are not present this time
around.  And so the Court has no good reason to set it aside.

SSI cites *American Casualty Company of Reading, PA v. B.
Cianciolo, Inc.*, 987 F.2d 1302 (7th Cir. 1993), to support its
argument that the Court can, and should, throw out the second
verdict and reinstate the original verdict, with modifications.
To be sure, on appeal, if the Seventh Circuit determines that
this Court's reasons for ordering a mistrial were wrong – as was
the case in *Cianciolo* – it can take that path.  But that's a
move for the Court of Appeals, not for this Court.  SSI's motion
is denied.

B.  <u>F&D's Motion for Judgment as a Matter of Law</u>

F&D has moved, under Rule 50, for judgment as a matter of
law on Pileco's Miller Act claim.  Rule 50(a) provides that,
"[i]f a party has been fully heard on an issue during a jury
trial and the court finds that a reasonable jury would not have
a legally sufficient evidentiary basis to find for the party on
that issue, the court may: (A) resolve the issue against the
party; and (B) grant a motion for judgment as a matter of law
against the party on a claim or defense that under the
controlling law, can be maintained or defeated only with a
favorable finding on that issue."  If the Court declines to

13

grant a party's motion for judgment as a matter of law before the case goes to the jury, the party may renew its motion after the verdict is accepted and judgment is entered. F&D made its Rule 50(a) motion at the close of Pileco's case in chief, and has now renewed its motion, consistent with the provisions of Rule 50(b). Additionally, consistent with Rule 50(b), F&D (like SSI) has included a request for a new trial under Rule 59.

F&D argues that it is entitled to judgment as a matter of law because Pileco failed to prove that it furnished the cutter, desander and related equipment; failed to prove that it furnished the repairs and parts that are reflected in the Pileco invoices totaling $632,897.35; and failed to prove that it furnished the parts and services reflected in the KVT invoices. F&D also argues that the Court erred when it denied summary judgment on the Miller Act claim because the contract at issue here was clearly a sales contract, not a lease. Finally, F&D argues that the Court erred when it *sua sponte* ordered a new trial; in particular, F&D argues that there was no basis for the Court to conclude, as it did, that the first jury's punitive damages award was "monstrously excessive" and that the first jury failed to consider the equitable adjustment. For the reasons explained below, F&D's motion for judgment as a matter of law or, in the alternative, for a new trial, is denied.

14

"The Miller Act provides a private right of action to an unpaid subcontractor on a federal project to collect on the bond posted for the project." *United States Department of the Navy v. Norden Enterprises*, No. 01 C 8968, 2004 WL 42318, at *4 (N.D. Ill. Jan. 6, 2004). Specifically, the Act states:

> Every person that has furnished labor or material in
> carrying out work provided for in a contract for which
> a payment bond is furnished under section 3131 of this
> title and that has not been paid in full within 90
> days after the day on which the person did or
> performed the last of the labor or furnished or
> supplied the material for which the claim is made may
> bring a civil action on the payment bond for the
> amount unpaid at the time the civil action is brought
> and may prosecute the action to final execution and
> judgment for the amount due. 40 U.S.C. §3133(b)(1).

Thus, to win on its Miller Act claim, Pileco had to prove that it "furnished labor or materials" and that it was not "paid in full."

F&D argues that Bauer, not Pileco, furnished the equipment provided to SSI under the Rental Agreement; it argues that the evidence was unequivocal on this point. And the Court agrees: the evidence clearly established that Bauer provided the cutter, the desander and the related equipment, as well as all of the spare parts. In fact, the evidence showed that Pileco did little or nothing with respect to the furnishing of equipment, parts and services. But F&D's argument ignores the relationship

15

between Bauer and Pileco – a relationship that was established in the evidence.

Although Bauer negotiated the contract with SSI and clearly possessed all of the equipment, knowledge and experience SSI wanted and needed, Bauer made Pileco, its newly-acquired wholly-owned United States subsidiary, the contracting agent on the deal. Thus, although Bauer was really doing all the work and pulling all the strings, technically, the subcontractor was Pileco. SSI was to pay Pileco rent under the agreement and Pileco, not Bauer, was to provide all of the parts and services required under the contract. Thus, looking solely to the contract, Pileco, not Bauer, was the subcontractor. And, in fact, Pileco, not Bauer, made the claim on the bond. As Pileco points out, had Bauer made the claim, F&D would surely have attempted to deny the claim based on the fact that Bauer was not a party to the contract.

The Court turns next to the question of whether Pileco established that it was "unpaid." In his closing, counsel for Pileco asked the jury to award damages in the amount of $3,028,049.99. Counsel explained that this amount included $1,895,200.00 in unpaid rent on the cutter and $60,000 in unpaid rent on the spare gearbox, as well as unpaid invoices for parts and services -- $440,075.59 owed to Bauer and $632,897.35 owed

16

to Pileco.  The jury awarded Pileco $2,230,381.35 --
$2,588,097.35, less an equitable adjustment in the amount of
$357,716.00.  Although the jury did not include its
calculations, it is clear that the jury accepted Pileco's
arguments concerning the equitable adjustment and calculated it
at the rate of $2,960.00 per day ($88,800 per month divided by
30 days), with 120.85 days of downtime.  It is also clear that
the jury accepted Pileco's arguments on damages, as it awarded
Pileco the unpaid rent it requested and the unpaid invoices owed
to it; the jury did not award Pileco the amount of the KVT
invoices; those were owed to Bauer.

Thus, the jury clearly concluded that Pileco was "unpaid."
And, although the Court, had this been a bench trial, may have
reached a different conclusion, it cannot say that the jury's
decision is unsupported in the evidence.  Based upon the
evidence before it, the jury could reasonably have concluded
that Pileco was entitled to the unpaid rental payments and the
unpaid invoices for parts and services.

F&D also argues that the agreement between Pileco and SSI
was not a lease, but a purchase agreement, which would take it
outside the scope of the Miller Act.  But F&D made the same
argument on summary judgment, and the Court rejected it.  In its
summary judgment ruling, the Court held that "as a matter of

law, the agreement between Pileco and SSI was a lease agreement, not an agreement for the purchase of capital equipment. Thus, the Court rejects F&D's arguments about Pileco's eligibility to collect under the bond in the first instance." Decision at p. 24. The Court did, however, agree with F&D that "Pileco is limited in its [Miller Act] recovery to the provisions of the contract; unless the contract requires SSI to pay for a particular category of costs, those costs are not due under the contract and they cannot be recovered under the bond." Decision at pp. 24-25.

Pileco made a claim on the bond, though throughout these proceedings Pileco has behaved as if it were Bauer's agent, seeking to recover not just what it was owed, but also what Bauer was owed. And that is consistent with the contract, which, though negotiated by Bauer, was executed by Pileco. And, although F&D has repeatedly emphasized the fact that Bauer, not Pileco, "furnished" the equipment, parts and services, as Bauer's agent and as the contracting party, Pileco has the right to recover on the bond. The jury's verdict on this claim was consistent with, and supported by, the evidence introduced at the trial. That evidence demonstrated that, although the equipment, parts and services all came from Bauer, Pileco acted

as Bauer's agent with respect to the contract with SSI. Accordingly, F&D's motion is denied.

C.  Pileco/Bauer's Motion for Taxation of Costs

Pileco and Bauer have filed a motion seeking to recover from SSI costs in the amount of $50,641.96.  The bulk of these costs relate to depositions, though Pileco also seeks to recover the $350 filing fee and the $2,747.50 it paid to its expert, Craig Clarke.

First, many of these costs are not recoverable under the statute.  28 U.S.C. §1920 provides that the following costs may be taxed:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The statute would not allow Pileco to recover delivery fees or fees for copies of transcripts at the rates identified; nor

would it allow Pileco to recover the fees it paid its own expert.  And an analysis of which deposition transcripts and which documents were actually necessary to this case would eliminate many of the costs Pileco requests.

Second, the Court finds that, under the circumstances of this case, it would be inappropriate to award even those costs that would otherwise be recoverable under the statute.  Rule 54(d)(1) provides that "costs-other than attorney's fees-should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Despite the use of the word "should," the decision to award costs "is firmly within the district court's discretion." *Chamberlain Manufacturing Corp. v. Maremont Corp.*, No. 92-C-0356, 1995 WL 769782, at *3 (N.D. Ill. Dec. 29, 1995)(citing *O.K. Sand & Gravel, Inc. v. Martin Marietta Technologies, Inc.*, 36 F.3d 565, 571 (7th Cir. 1994)).  The Rule "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006).  *See also Benuzzi v. Board of Education of City of Chicago*, No. 09 C 3510, 2010 WL 3038101, at *1 (N.D. Ill. July 30, 2010)("There is a strong presumption that prevailing parties are entitled to an award of costs, as permitted by statute.")(citing *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 864 (7th Cir. 2005)).

Generally, costs are denied only when a prevailing party has engaged in misconduct worthy of a penalty or when the losing party is unable to pay. *Benuzzi*, 2010 WL 3038101, at *1 (citing *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 945 (7th Cir. 1997)); *Rivera,* 469 F.3d at 634-35. *See also Mother & Father v. Cassidy,* 338 F.3d 704, 708 (7th Cir. 2003)(the Seventh Circuit recognizes "only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent.").

In the exercise of its discretion, the Court declines to award costs. The first trial of this case resulted in an award against Pileco/Bauer that totaled almost $25 million. Although that verdict was untenable as expressed, had the jury taken greater care in completing the verdict form, the Court would have found that the evidence supported, to a large extent, that award. Fortunately for Pileco and Bauer, the jury's attempt to punish Bauer and reward SSI was inartfully done, and the case had to be retried. And, although the second jury was infinitely more kind to Pileco/Bauer, the fact is that this was a close case and could very easily have gone the other way. Given the circumstances of this case, and given the evidence adduced at

trial concerning the financial straits SSI, Fred Schmednecht and Dana Wesolek are in partially because of their dealings with Pileco and Bauer, the motion for taxation of costs is denied.

D.    Pileco's Motion for Statutory Interest

Finally, Pileco filed a motion seeking an award of statutory interest pursuant to 815 ILCS 205/2.  Pileco argues that it is entitled to prejudgment interest on unpaid rent (for both cutter and gearbox) and on unpaid invoices covering parts and services, calculated at the statutory rate of 5% per annum beginning thirty days after the end of each rental period through the date of the judgment.  Pileco seeks a total of $631,242.28.

Pileco contends that Illinois law "mandates prejudgment interest, as a matter of right, when the creditor seeks payment of a fixed sum on an instrument of writing."  Motion, p. 4. Accepting for the moment that this statute would even apply here, given the history of this case, Pileco's characterization of these sums as "fixed" is misplaced -- the sums were not "fixed" until the second jury reached its verdict and judgment was entered -- as is the notion that SSI's delay was "vexatious and unreasonable."  The original jury's verdict shows how very reasonable SSI was to withhold payment until these matters were resolved. Pileco's motion is denied.

## Conclusion

For the reasons set forth above, the Court denies SSI's motion to amend/correct the judgment [#339]; denies F&D's motion for judgment notwithstanding the verdict [#337]; denies Pileco's motion for assessment of statutory interest [#333]; and denies Pileco and Bauer's motion for taxation of costs [#335].

Date: December 11, 2013

E N T E R E D:

_____

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT