# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

FIDELITY AND DEPOSIT COMPANY )
OF MARYLAND, as assignee of )
PILECO, INC. (n/k/a Pileco-Bauer, Inc.), )
                                )    Case No. 09 C 7459

Plaintiff/Judgment Creditor )
                                )    Magistrate Judge Susan E. Cox

      v. )
                                  )

SLURRY SYSTEMS, INC., *et al.*, )
                                  )

Defendant/Judgment Debtor. )

## ORDER

Presently before the Court is the Renewed Motion For An Award of Pre-Judgment Interest Against Slurry Systems, Inc. [Dkt. 462] filed by Plaintiff Fidelity and Deposit Company of Maryland ("F&D"), as assignee of Pileco, Inc.  For the reasons discussed more fully below, that motion will be granted in part, and denied in part; the Court awards F&D, as the assignee of Pileco, Inc, $69,426.35 in prejudgment interest.

## BACKGROUND

This Court set out the factual and procedural background of this case in its previous order on April 1, 2016 [458]; the Court assumes familiarity with that background and only recounts the portions necessary to decide the motion presently before the Court.  The original plaintiff, Pileco, Inc. ("Pileco"), sued both Defendant Slurry Systems, Inc. ("SSI") for breach of contract under Illinois common law, and SSI's performance and payment bond surety F&D pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq*,.[1] because SSI refused to pay Pileco for a trench cutter that

---

[1] Pursuant to the Miller Act, SSI was required to post a bond "guaranteeing both the performance of the prime contractor's contractual undertakings and the payment by the prime contractor of its subcontractors and material suppliers."  *See United States, ex rel Pileco, Inc. v. Slurry Systems, Inc.*, 804 F.3d 889, 891 (7th Cir. 2015).

SSI had leased from Pileco to complete a federal reservoir project being overseen by the United States Army Corps of Engineers. *See United States, ex rel Pileco, Inc. v. Slurry Systems, Inc.*, 804 F.3d 889, 891 (7th Cir. 2015). Eventually, a jury awarded $2,230,381.35 in favor of Pileco and against SSI on the breach of contract claim, and $2,230,381.35 in favor of Pileco and against F&D on the Miller Act claim. Cross-appeals were filed before the Seventh Circuit, and the case was remanded to this Court to award pre-judgment interest, post judgment interest, and costs.

Following the remand, F&D paid Pileco $2,685,550.00 in satisfaction of the judgment entered against it "and in settlement of Pileco's claims against F&D for pre-judgment interest and costs," in exchange for a release of Pileco's claims against F&D and an assignment of Pileco's judgment against SSI to F&D. (Dkt. 450 at ¶ 7.) F&D filed then a motion before the Court, seeking, *inter alia*, $631,242.28 in prejudgment interest, and $50,641.96 in costs. The Court granted the motion in part, and denied it in part; the Court awarded F&D $36,308.46 in costs, dismissed F&D as a defendant and substituted F&D as a judgment creditor, and denied the motion without prejudice as to the prejudgment interest. Regarding prejudgment interest, the Court denied the motion because F&D provided very little guidance as to the appropriate amount of interest, and the Court was concerned with the possibility of a double recovery for F&D standing in the shoes of the assignor Pileco. F&D, as assignee of Pileco, filed a renewed motion for prejudgment interest, which is presently before the Court. (Dkt 462.) Pileco has not responded to the instant motion, and has represented that it does not intend to do so. F&D seeks $524,595.00 in prejudgment interest from SSI.

## DISCUSSION

As the assignee of Pileco, F&D "stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." *Perry v. Globe Auto Recylcing*, 227 F.3d

950, 953 (7th Cir. 2000).  In other words, we must treat this motion precisely as we would if Pileco were the movant.  Pileco was damaged when SSI failed to pay Pileco under the terms of the trench cutter lease.  Pileco filed suit and won 2,230,381.35 judgments against both F&D on Pileco's Miller Act claim and SSI on Pileco's breach of contract claim.  Of course, these two judgments arise from the same injury – namely, SSI's refusal to pay Pileco for the trench cutter.  Pileco did not suffer $4,460,762.70 in damages (*i.e.*, two 2,230,381.35 injuries), but instead suffered $2,230,381.35 in damages, and had a choice of which defendant it would try to collect from to make itself whole.  Pileco's injury also included prejudgment interest as part of its compensatory damages, because "[m]oney today is simply not a full substitute for the same sum that should have been paid some time ago." *See Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1297 (7th Cir. 1987).

Pileco then settled its judgment against F&D for $2,685,550.00, which included prejudgment interest and costs.  If Pileco were bringing the instant motion, it would be seeking an additional $524,595.00 from SSI on top of the $2,685,550.00 it collected from F&D as satisfaction of the judgment against F&D.  As noted above, the damages suffered by Pileco were determined by the jury award -- $2,230,381.35.  Assuming that the appropriate amount of prejudgment interest on those damages is $524,595.00, as F&D seeks in this motion, Pileco would be entitled to $2,754,976.35 in damages ($2,230,381.35 in damages, plus $524,595.00 in prejudgment interest).  Allowing Pileco to receive $2,685,550.00 from F&D and $524,595.00 would result in a double recovery to Pileco; essentially, Pileco would be collecting over $3.2 million on approximately $2.75 million dollars of damages.

This raises the specter of the collateral source doctrine, which states that "benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer

will not diminish damages otherwise recoverable."[2] *State Sec. Ins. Co. v. Frank B. Hall & Co., Inc.*, 109 F.R.D. 95, 96 (N.D. Ill. 1985) (internal quotations and citations omitted). This issue often comes up in the personal injury context, when a plaintiff receives payment on an insurance policy it has taken out to protect against injury, while also seeking damages from the tortfeasor. In such a case, courts must balance the possibility of a double recovery to the plaintiff with the possibility that the wrongdoer will escape "paying for all the harm caused by his or her wrong." *Id*. Normally, courts have "resolved that dilemma by awarding the benefit of the collateral source proceeds to the plaintiff, who has paid for them in one or another, and denying that benefit to the defendant, who has not." *Id.*

There are two purposes behind the rule in such cases. "The first is that one who gratuitously donates a benefit to an injured party should not instead be forced, in effect, to transfer that benefit to the wrongdoer." *Austin Co. v. Int'l Brotherhood of Elec. Workers, Local Union No. 701*, 665 F. Supp. 614, 619 (N.D. Ill. 1987). Obviously, this reason does not apply in this case, as F&D did not gratuitously pay Pileco; F&D paid Pileco to satisfy a judgment entered against it by a federal jury. "The second purpose is that one who pays for some insurance against some type of injury should not be forced to donate the proceeds of that person's industry and foresight to the wrongdoer who cause the injury." *Id.* This second purpose also does not apply in this case, because Pileco did not pay for insurance; in fact, SSI is the party that exercised foresight by securing the bond from F&D.[3]

---

[2] Of course, it is questionable whether the money received from F&D is, in fact, "a source wholly independent of and collateral to" the wrongdoer, SSI. If the money received from F&D was not a collateral source, the Court could clearly reduce the amount of the judgment against SSI by the amount received from F&D. *See Kirkland v. United States*, 1998 WL 895658, at *4 (N.D. Ill. Dec. 9, 1998). However, the Court does not reach that issue and will proceed as though the payment from F&D was a collateral source.

[3] The Court recognizes that the bond was a requirement under the Miller Act, but does not believe that fact changes the analysis herein.

However, "[o]ne approach the law had developed in certain appropriate cases for accomplishing the goal of preventing a windfall to the defendant (that is, still holding the defendant liable for damages) while simultaneously avoiding double recovery to the plaintiff is the device of subrogation." *Id* at 620. In fact, "a plaintiff does *not* enjoy the benefit of the collateral source rule when his rights against the wrongdoer have been subrogated to an indemnitor." *Id.* at 620 (citing *Carter v. Berger*, 777 F.2d 1173, 1175 (7th Cir. 1985)). "In short, when subrogation is appropriate, as it is when there is some sort of actual or implied subrogation agreement, the collateral source rule does not apply." *Id.* In such cases, the subrogation means "that the plaintiff [is] no longer injured" because it has received payment for the injury, but the defendant, "through subrogation, [is] still liable for the damages it caused – liable to the [subrogee]." *Austin Co.*, 665 F. Supp. at 620. In Miller Act cases, "it has been well-established that a payment bond surety that discharges a contractor's obligation to pay a subcontractor is equitably subrogated to the rights of both the contractor and the subcontractor."[4] *National Am. Ins. Co. v. United States*, 498 F.3d 1301, 1306 (Fed. Cir. 2007).

In this case, the damages were caused by SSI as the wrongdoer when SSI breached the lease agreement with Pileco. The collateral source is the funds owed to Pileco from F&D under the performance and payment bond that SSI posted with F&D. Allowing Pileco to collect from both the payment bond surety F&D and the prime contractor SSI for the full amount of its judgment against both of them would surely result in double recovery to Pileco. Of course, forcing F&D to shoulder the entire burden for SSI's wrongdoing would result in a windfall to SSI. However, as discussed above, "the device of subrogation has developed for the very purpose of preventing a windfall to defendant while simultaneously avoiding a double recovery

---

[4] It is unclear whether the surety is subrogated to rights of the subcontractor vis-à-vis the general contractor for the contractor's wrongdoing, or the United States government for payments that the government owed to the general contractor. However, whatever the scope of the rights of the subcontractor, the surety is subrogated to those rights.

to the plaintiff." *Edward Gray Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 1995 WL 437509, at *4 (N.D. Ill. July 21, 1995).

Upon paying Pileco approximately $2.6 million as a payment bond surety discharging SSI's obligation (as the prime contractor) to pay Pileco (as the subcontractor), F&D became equitably subrogated to the rights of Pileco. *See National Am. Ins. Co*, 498 F.3d at 1306. Conversely, Pileco's damages were reduced by that same $2.6 million. Therefore, when Pileco assigned its rights to collect its judgment against SSI to F&D, it could only assign its right to this reduced amount. This Court finds that the prejudgment interest calculation of $524,595.00 in the renewed motion is correct.[5] Together with the $2,230,381.35 judgment, SSI caused Pileco $2,754,976.35 in damages. Subtracting the $2,685,550.00 that F&D paid to Pileco pursuant to the surety bond, the remaining damages to Pileco were $69,426.35. That is what Pileco was entitled to assign, and that is what F&D, standing in the shoes of Pileco is entitled to receive. As such, the Court grants F&D's motion in part, and denies it in part, and awards F&D $69,426.35.

The irony of this is that F&D may have greater rights under equitable subrogation, but the Court does not reach the scope of F&D's right as subrogee in this opinion. F&D's brief signals that it is aware of the possibility of subrogation or indemnification, but does not explain its choice to proceed in the role of assignee. For example, F&D argues that "the assignment in no way caps F&D's recovery to the amount it paid Pileco to satisfy its judgment against F&D's payment bond," and "[j]ust as important, the assignment also does not refer to subrogation." (Dkt. 463 at 6.) However, F&D does not explain why the lack of reference to subrogation is "important" or how it would inform the amount that Pileco (or F&D as Pileco's assignee) could recover from SSI. Moreover, the assignment does, in fact, cap F&D's recovery as an assignee,

---

[5] The amount is calculated as follows: ($2,230,381.35/365) x .05 = $303.5 daily interest rate. $303.53 x 1,717 days (January 6, 2009 to September 20, 2013) = $524,595.00

because the assignment, as a matter of law, only assigns the rights that Pileco possessed at the time of the assignment. Those rights were reduced by the amount that F&D paid to Pileco to reduce Pileco's damages. Later in its brief, F&D also asserts that "sureties have common law rights of recourse against primary obligors like SSI including common law indemnity rights and equitable subrogation rights that insurers typically do not have." (Dkt. 463 at 8.) This Court's review of the case law suggests that F&D is correct on this account, and that it would have been more appropriate for F&D to invoke one of those common law rights, rather than attempt to recover monies as the assignee of a plaintiff who had been made substantially whole from one of the co-defendants in the suit.

Nor do the cases cited by F&D prove otherwise. F&D relies heavily on *Nationwide Agribusiness Ins. Co. v. Tweet/Garot Mech., Inc.,* No. 04-c-0673, 2005 WL 2076672 (E.D. Wis. Aug. 23, 2005), to support its position that "F&D is not precluded from seeking an amount of pre-judgment interest from SSI as assignee of Pileco that exceeds what F&D owed to Pileco." (Dkt. 463 at 5.) In that case, an insurance company paid its insured for damages the insured had suffered pursuant to an insurance policy that the insured had taken out; the insurance company then sought to recover the amounts it had paid to its insured from the defendant, as well as the amount of the amount of the deductible that the insured had paid to the insurance company. *Id.* at *1. Crucially, the insurance company plaintiff in *Nationwide* brought "its complaint as the subrogee" of the insured, and alleged that it was "subrogated to the rights of its insured to the extent" of the payments it had made to the insured;[6] the complaint further alleged that the insured "assigned to the [insurance company] its right of recovery of its deductible." *Id.* In its

---

[6] In fact, the caption of that case shows that the insurance company initiated the suit as the subrogee of its insured. *Nationwide*, 2005 WL 2076672, at *1.

analysis of the case,[7] the court drew a key distinction – as to the amount that the insurance company paid to the insured, it was "clearly subrogated to that extent," but the amount of the deductible was an issue of contractual assignment, not subrogation, because the insurance company had not paid the insured's deductible. *Id.* at 4 ("Subrogation is an act of the law, depending not on contract, but upon principles of equity, while assignment is an act of the parties and depends generally on intention"). As an assignee, the insurance company -- now standing in the place of the insured – was only entitled to the amount of the loss that had not already been paid by the insurance company. Had the insurance company, in its role as assignee, sought to recover the amounts that the insurance company had paid to the insured, the court likely would have found that to be an improper double recovery. However, as a subrogee, the insurance company could recover the amount of the damages that it had already paid to the insured.

In short, the role in which you seek to recover the money matters. As an assignee of Pileco, F&D is attempting to recover damages for which Pileco has already been made whole, which is substantively different than the insurance company in *Nationwide*, where the insurance company was attempting to recover those amounts as subrogee. The amount of damages that Pileco suffered as a result of SSI's failure to pay is fixed -- $2,230,381.35, plus interest. When F&D paid $2,685,550.00 to Pileco, Pileco's damages were reduced, and the only amount it could legally assign to F&D as an assignee was the amount of its damages reduced by the $2,685,550.00. F&D, in its role as assignee, is entitled to no more than that amount. It may have greater rights in its role as subrogee or indemnitee, but not as an assignee, which is the position it has taken in the instant law suit.

---

[7] The legal questions tackled by the court in *Nationwide* dealt with diversity jurisdiction and joinder, among other issues that are not before the Court in the instant motion.

Finally, F&D spends much of its briefs trying to factually distinguish several cases from this one, but F&D misses the point. The cases cited by the Court in its previous opinion were meant to stand for legal principles, not to present cases that are factually on all fours with the instant suit, and for good reason; the Court has found no cases where a surety/ insurance company has paid a party for damages caused by its own insured/obligor and then sought to recoup that money from its insured/obligor through an assignment of the party's claims against the insured.[8] In fact, the *Nationwide* case cited by F&D involved an insurance company paying its own insured, and seeking payment from the wrongdoer under both assignment and subrogation theories; it did not involve in insurance company seeking reimbursement from its own insured. Frankly, the Court has some misgivings about whether this maneuver would be appropriate, beyond the risk of double recovery to the plaintiff. Doing so would essentially transfer all of the risk that the obligor had paid for by securing the bond, which the surety has agreed to assume by accepting the bond payment, and allow the surety to recoup the money it promised to pay in the case of a failure on the part of the obligor. To the extent that such activity is permissible, it seems to this Court that indemnification would be the appropriate avenue to pursue.

However, the Court need not rule on that at this time. The Court has found no cases that support F&D's contentions. Assignees stand in the shoes of the assignor and can only recover what the assignor could have legally recovered – no more, no less. Here, Pileco's damages were reduced when it received the payment from F&D, and it could only recover from SSI the amount

---

[8] F&D argues that "[i]n contrast to insurers, who anticipate incurring a loss and charge premiums based on that actuarial risk calculation, sureties like F&D merely guarantee the obligations of primary obligors and do not ever anticipate incurring a loss." (Dkt. 463 at 7.) The Court is not persuaded that this distinction is meaningful. If sureties never anticipate incurring a loss due to their obligor's actions, what precisely are they guaranteeing, and why would anyone ever pay them for a payment or performance bond? Sureties, like insurance companies, accept payment from their primary obligors and will take on the payment or performance should the primary obligor fail to meet its obligations in exchange for accepting that payment. In many ways, the surety acts just as an insurance company would.

of damages remaining after F&D's payment was deducted. That is the scope of the right that F&D was assigned, and it is not entitled to any more than that as an assignee.

## CONCLUSION

For the reasons discussed above, the Renewed Motion For An Award of Pre-Judgment Interest Against Slurry Systems, Inc. [Dkt. 462] filed by Plaintiff F&D, as assignee of Pileco, is granted in part, and denied in part; the Court awards F&D $69,426.35.

**ENTER:**

**DATED:**    7/21/2016

_____
**U.S. Magistrate Judge, Susan E. Cox**